Case number 16-5614, Gloria Marshall v. The Rawlings Company LLC, et al. All arguments not to exceed 15 minutes per side. Mr. John Christopher Sanders for the appellant. Good morning. I'd like to, with the court's permission, to reserve three minutes for rebuttal. Unlike the cases you heard this morning, our case is fact-intensive as opposed to legal-intensive. We're here because the district court erred by requiring direct evidence to decide against us, instead of against the weight of, in our brief, 20 pages of circumstantial evidence. Let me point out just a couple of areas that the court made a mistake about. Trial court said that we only produced one stray, isolated comment of smoking gun evidence concerning the demotion of Ms. Marshall following her first FMLA leave in the summer of 2012. In that moment, Ms. Marshall is called on the carpet after she has been working night and day to try to reduce the backlog of her work, and the bias supervisor, a man named Jeff Bradshaw, says, well, are you going to be taking any more leave? The trial court said, well, that's just not enough in and of itself, and ignored the context. Context is essential in cases which rely upon an entire chronology and rely upon circumstance. Can I take you to an issue, just a way of thinking about the case? I guess I would say what struck me as maybe your best argument was this cat's paw argument, because it dealt with the reality that Rawlings, who made the firing decision, didn't seem to know about the prior FMLA leave. So normally for the employer, that's pretty good, because how can you say you're interfering or retaliating if the decision maker didn't know that? So the idea behind cat's paw is that, well, if you have a deputy that makes the recommendation and yet the deputy knows about it and the deputy is retaliating, you can't inoculate this by getting another decision maker. So that's what's going on in the case. But what I would have thought, what I'm wondering about here is the people that spoke to Rawlings, they weren't saying fire her. I forget his name. It's not Bradshaw. It's the other fellow. Ellsner. Ellsner goes to Rawlings because he's concerned that there's been an allegation by Marshall of harassment. She says she doesn't want to pursue it, but I guess he's protecting himself or following company policy that you've got to report harassment. So that's what I take him to be doing when he talks to Rawlings. That's what then leads to the meeting. I don't know what kind of guy he is, but maybe he was impulsive. I'm not sure. But do you get my question? In other words, you don't seem to have the deputy going to Rawlings saying we want you to fire her. That's not what I think they say. They say there's harassment that you need to look into. And, by the way, we don't think their harassment's justified. So that's why I'm wondering whether the cat's paw theory applies, assuming we apply it in this setting. I think the cat's paw theory does apply. Liability does apply. I think what the district court did was use the honest belief rule to effectively negate the cat's paw and liability. I'll circle back to that. Let's just pretend there's no honest belief rule. Okay. How does the cat's paw theory apply to the termination? There are two biased supervisors, Jeff Bradshaw and Mike Ellsner, both of whom demonstrated over a period of a year and a half that they are biased against her. How do we know that Ellsner was biased against her? We've got the comment that Bradshaw made, so I'll accept Bradshaw. But how do you know about Ellsner? Ellsner, because of disparate treatment over a period of time, much more is required of Ms. Marshall than is required of other employees who are not similarly situated. Ellsner knew about the FMLA leaves? Yes. After the second FMLA leave, this is very important, Ellsner considers placing Ms. Marshall on a performance improvement plan. He says, maybe we should consider putting her on a performance improvement plan, even though she's still excelling at her job, but decides not to do it because he's concerned about whether it would be legal under the Family and Medical Leave Act. He says this, and it's the tip of the iceberg indicating his state of mind. It may be his guilty conscience speaking, we don't know, but it's for the jury to decide whether to infer from that that Mr. Ellsner was in fact biased. In response to Judge Sutton's question, Ellsner is the one who goes to Mr. Rawlings the day before Mr. Rawlings fires her. They meet, and it's in that very afternoon, Mr. Rawlings calls Ms. Marshall and says, I want to meet with you. She's already left, she's too upset to work. The very next morning, Mr. Rawlings meets with Ms. Marshall, they talk for five minutes, and he says, your allegations against this Jeff Bradshaw are false, and therefore you're lying about my people. I won't have this in the course of the way we function in this company, you're fired. That's not all. He wasn't happy that she left without explanation the day before, and there was a history of the long coffee breaks and all this other stuff. Didn't he know about that? Recall now, she's an exempt employee. She's a salaried worker, and she is very, very productive. The idea that she's supposed to be chained to her desk is not the workplace culture there at Rawlings and Associates. And so when he suggests that somehow she's not doing enough work, that's more evidence that there is bias in this process. He's listening to biased supervisors. Biased supervisors being? Elsner and Bradshaw, the two. You're talking about Rawlings listening to? Yeah, George Rawlings listening to Mike Elsner and Jeff Bradshaw. But you don't maintain that Elsner recommended Rawlings fire her. I do, absolutely. So who's that? Does Elsner say? Where is that testimony? Elsner says that? Elsner has demonstrated his bias. I got the bias thing. Yes. But I'm just looking for evidence that Elsner or Bradshaw recommended to Rawlings that Marshall be fired. We're not privy to the conversation between Elsner and Rawlings. Did you do depositions and ask them about the conversation? We took his deposition. What was the answer to this question, or did you ask this question? The answer, I think, emerged later on in the course of what we heard from Ms. Marshall. I don't think he ever admitted one way or the other as to whether he recommended firing. I think it's clear you can infer that Mr. Rawlings only took the recommendation of his subordinates because he only talks to Ms. Marshall for five minutes. He doesn't talk to anyone else in the business. He doesn't talk to any of her coworkers. We have submitted two impartial affidavits from coworkers, Beth Davidson Estrada and Doug, name escapes me, who are clear that these folks have demonstrated their bias. Then simply to say that Mr. Rawlings was protective because there's no evidence that he communicated with Mr. Elsner, I think is presuming too much. How about the interaction between the honest belief rule? I'm really for both of you. The honest belief and cat's paw just seem to go right into each other. It's hard to see how you can respect both of them in this case. I think you can respect the honest belief rule whenever there is actual investigation by the decision maker, by the person who decides to terminate. For example, if Mr. Rawlings had said, I'm going to meet with Ms. Marshall, then I'm going to meet with some of her coworkers. I'm going to review her record. I'm going to look into this for myself. Then he will have formed an honest belief. But he didn't do any of that. Could he have formed an honest belief as a result of this very short meeting with Marshall, where Marshall says that Bradshaw was harassing her and Rawlings says, no, you're lying, Marshall. I think that's too brief a time to form a true honest belief. I think he's got his mind made up. Hypothetically, you could have somebody exhibiting non-truthful behavior in a five-minute probing interview. I think if you've got somebody dead to rights and you pointed questions to them, they give evasive answers, they could form an honest belief. That's not what happened here. Ms. Marshall is an exemplary employee. She's making more money for the company than anyone else in her division. She hasn't broken any rules, but she's accused of harassment which is not of her making. She is dragged into the investigative process, which is used not for protection, but is used as a sword in which to attack her. That's not what current modern HR policy is supposed to do. We know that under the line of cases regarding sexual harassment, beginning with Vincent and going on to Farragher, that if you have a fair HR policy that investigates harassment in an unbiased situation, that the employer can use it as a defense to an accusation of harassment. But you can't use it as a sword to drag her into a process which is not of her making, which she tried to avoid multiple times. Did she ever elaborate on what the harassment was? The first time she mentions it, she says Jeff Bradshaw harassed me at the luncheon in May, and he harassed me when we met on the no recovery meeting in August of 2012. So what seemed a little odd to me is that harassment is usually in the context of some sort of protected class, either race or sex. So if somebody just heard that, that's what they would think. Now Bradshaw and Elsner know about this FMLA leave, but who's the woman that they reported it to? Plumlee or something like that. Plumlee is the HR representative. So Plumlee knows about it also? Yes. Okay. But nobody puts a label on it, right? Harassment for taking FMLA leave, right? She's being quizzed about a complaint she didn't want to make. And so she's brought before them trying to get out of this process because she's afraid she's going to be fired. She says to Laura Plumlee, am I going to get fired? No, you're not going to get fired. Within 12 hours, she's fired. So she's not going into this presentation with a written document, which often goes along with the complaint process. She's not going into it with any sort of preparation to explain what the motivation is behind the harassment. She's trying to answer their questions and be done with it. How is Rawlings supposed to find out what the nature of the harassment is if she doesn't tell him? She marshal doesn't tell him? Yeah. Well, we don't know. If he had conducted an honest belief investigation the way he should have, she would have had adequate time to prepare. She would have been able to describe this entire scenario of events over a year and a half and explain why she believes harassment was motivated based upon her mental health issues and her FMLA. She didn't have any of that opportunity. It wasn't afforded to her. Your red light is on, so we should hear from the other side. Thank you. May it please the Court, I am Mike Risley here on behalf of the Rawlings Company. Summary judgment was proper because the plaintiff could not satisfy her burden under the McDonnell-Douglas burden shifting test with regard to her claims of retaliation for taking FMLA leave. I'm just curious. An employee has the right to take the leave and then they have the right to get their job back. So what is the employer allowed or not allowed to do with respect to the work for the time that the person isn't there? I mean, let's say somebody takes a four-month leave. Is the employer allowed to have all of that work accumulate and then when the employee gets back, the employee is expected to do their present job and four months of back work? Well, they certainly are entitled to have their position back. And in the normal course of things, of course, business goes on during their absence. In this scenario, they held her files for her because her compensation was partially based on who closed those files. So it was in her best interest that those files that she closed on, she kept. But then when she comes back, she has to do all the back work that was left on her desk when she left. And she's getting new work when she comes? They did not give her new work. They took her off rotation is what the evidence showed. So she was not getting new files for a period of time when she came back. So they accommodated her time to allow her to catch up on her files. Isn't Bradshaw's comment a really difficult comment for you to overcome, the fact that he said, are you going to take another leave? Well, it was in the, of course, this was several months after she had taken the leave. Six months, I think. And I think the district court properly characterized it as a stray, isolated comment. How did it relate to the date of demotion or to the date of termination? It was a year before the date of termination. It was a month before the date of demotion. So that's a pretty quick temporal proximity. It's certainly within a time frame that it may be considered. But again, it was isolated and it did not make any reference to her leave. It was in terms of discussing her ability to do the work that she had to do. And it could be interpreted as a reasonable question is, do you know if you're going to have any time off? He did not say, are you going to take more FMLA leave? It could have been referred to vacation or whatever. Now, in isolation, though, it's not enough to establish any of the elements that the plaintiff needed to show. Suppose he had said, I hope you're not going to take another FMLA leave. That would be problematic if he made reference and it was clear that it was referring to FMLA leave. And he was suggesting that she shouldn't. That is not what the comment was. It was that our... It was more of a general and it was more of a question. And correct me if I'm wrong, but it was something like, are you going to take any more leave? Are you planning on taking any more leave again? Of course, for mental health issues. Did he know it was mental health issues that were the cause of her leave? I'm not sure the record is clear on that. It's often hard to predict. Right. But Bradshaw's role in this does raise the cat's paw issue that is discussed, which is a relevant consideration. We think cat's paws shouldn't apply because the evidence is not there to support the application of the test, even if it applied to FMLA. How do you do cat's paw and honest belief rule? Well, I think... They work together. The cat's paw theory is still relatively new. Those issues are being worked out. But I think it may go to the third issue that's relevant in the cat's paws analysis. And that is the plaintiff has to show that the superior making the decision would not have made the decision but for the actions of the subordinate. In other words, if the decision maker has the honest belief and would have made the decision based on that honest belief separate from anything... The honest belief rule trumps cat's paw all the time. Because that's the premise of honest belief. You just have an innocent mind. You've looked into it. And you think this person should be fired. And the whole point of cat's paw is to attribute the bad motives to someone who actually doesn't have them. That doesn't seem to be reconciling them. Well, I think it's a matter of proof. I think if there is proof that the decision would have been made regardless of the honest belief. But I do think the honest belief does trump cat's paw. Do you have any support for saying that? In other words, is there a case anywhere that says if someone's got an honest belief, the fact that there was a subordinate who was manipulating the evidence in front of you doesn't matter? I'm not aware of any as we stand here. But I do see how those two are related. That it had to have affected the decision. Because you could have a subordinate whose dislike for the person is very obvious. And they're trying to manipulate the boss. And the boss is like... Part of the thought process is... I'm taking everything this person says with a grain of salt. But still, this is what I conclude. That might be both a lack of causation and an honest belief that there really is something there. Right. And with regard to the termination which was discussed, the evidence was that there was no influence by Bradshaw with regard to the termination. As to the demotions, I mean... When he complained about her productivity, as I understand it, he didn't even... He didn't refer to the FMLA leave. Which maybe you'd put on one side of the scale as saying it didn't factor into it. But if somebody's behind or you're finding that someone's not getting their work done, wouldn't it be relevant to the decision maker that, well, this person just got back from a leave? I mean, you'd think that you would include that information to be fair to the person who's still trying to catch up. And in this situation, the evidence showed that she caught up. That she cured her backlog of cases. Okay. So then you get to the question, well, if she caught up around August, it was almost immediate that he decided that she wasn't doing the job, right? I don't think it was immediate. It was a matter of months, but... I mean, the discussion... A month? The statement was in August of 2012. Okay, and that's when she caught up, wasn't it, in August? It was actually earlier, it was by September when they were supposed to get caught up and she got caught up in September. Because there were two separate incidents. She got caught up, there was the backlog issue, which was resolved by September. Then in August, there was a discussion about closing files for which there would be no recovery, which was a separate issue. And it was during that discussion about a plan to close no recovery files that the stray comment was made. That was in August. So then it was in September when Laura Plumlee made the decision to demote Ms. Bradshaw. Right, but it was after Bradshaw spoke to Plumlee, right? Yes. Yes, Bradshaw did speak. Okay, so you have a situation where she's caught up the backlog and then he nevertheless is complaining about her. Because the evidence in the record shows that she developed further problems with the work that she had been given since the backlog. So these NR, are they called NR files? No recovery files. Some of them were hers, right? And while she was out, I know that she didn't get assigned new cases, but was she accumulating NRs from her subordinates? I don't believe so. I don't believe so, Your Honor. She had no recovery. And in fact, there were people assigned to help with, to close some of her files. So did her desk, meaning her stack of files, did it look exactly the same when she left and when she came back? I don't believe it did, because help had been provided while she was gone with regard to some of the no recovery files, some of those files. Her old ones or the new ones? The old ones, the ones that existed. Okay, are you saying that she had, does the record show that she had less work to do the day she came back than on the day she left? That she had less of a backlog the day she came back than when she left? I believe the record would reflect that she had fewer no recovery files. The other files were the same that she had, because she had been, the evidence shows she had been taken off rotation, meaning no new files had been assigned. Now, at some point after she came back, she went back on rotation and started getting new files. But when she got back, I believe the evidence is that she had fewer files, because some of the no recovery files had been closed. Okay. When you talk about those no recovery files, I'm finding a little bit confusing. Because I thought there were two types. Her own and the ones that she had to sign off on from her subordinates. That may be the case. That as a team lead, that she oversaw the closing of no recoveries of members of her team. But it seems, the way you've described the timing, she caught up in September on the backlog. In August, which precedes September, there was the stray comment, as you call it, from Bradshaw. As the district court described it. Yeah, but he's adopting your characterization, I assume. And then in September, Plumlee decides to demote her, even though she's caught up with the backlog. That is correct. And the decision maker, Ms. Plumlee, saw that she was struggling to meet her work demands. And Ms. Plumlee wasn't familiar with the fact that she had taken FMLA leave. Was not. Was unfamiliar. She did not know. Doesn't that support the cat's paw theory? You've got Bradshaw going in and complaining, and he doesn't even provide the information that might explain it. Like, she came back, she took care of her backlog, and now she's... Wouldn't that be relevant to a decision maker? Like, how long has this person been back? Well, and Ms. Plumlee said that she made her own determination as to the decision to demote her. Right, but maybe without all the information. Well, her affidavit speaks for itself, obviously, and you'll review that. And what about the testimony that says that everybody had a backlog? Well, such general vague accusations of everybody had a backlog is insufficient to create an issue. There has to be evidence of particular people similarly situated who had similar backlogs that were treated differently. And there is no evidence of that. And that's really what the case is about, is the absence of evidence to support these vague general allegations of, well, everybody had backlogs, and my co-workers were talking bad about me. There's just... The evidence of what happened supports the summary judgment that the trial court granted. And was the discovery period closed in this case? The discovery period was closed. The motion for summary judgment was filed on the last day for the filing of filing dispositive motions. The trial date was within a few months of when the court granted the motion for summary judgment. So there is certainly plenty of time. The harassment allegation, which ultimately leads to the firing, did Elsner follow? What was company protocol when it comes to allegations of harassment? When an allegation of harassment is made, obviously, it needs to be reported to human resources. And that's what happened in this case. Don't worry about it. Right. The evidence is pretty clear what happened. She was confronted with what was perceived to be some wrongful conduct with regard to work. And her defense was, well, I've been harassed. I don't think an employee has the right to make such allegations and say, but don't report it. Try to use it as a defense to her conduct and say, oh, but don't report it. Once that allegation is made, there is an absolute duty to report it. But the company protocol says that? It does say that. Now, the record is not entirely developed, but certainly it is the policy to report such claims to human resources, which was what was done. The report was made to human resources. Elsner did not go to Rawlings to report it. The report was given to human resources. Human resources went to George Rawlings. George Rawlings then called Michael Elsner because he was at present at the two times when these alleged acts of harassment occurred. There is no allegation Elsner went to him or recommended any conduct with regard to Gloria Marshall with regard to the termination. Do we know what Elsner said about those allegations? He said that he did not believe the conduct was harassment. He didn't say that directly to Rawlings? He did say that to Rawlings when Rawlings called him. Rawlings called him. All he did was speak to the two people who had showed a little bit of displeasure with her FMLA. He had no conduct with Bradshaw with regard to the termination. Absolutely none. He got a report from the human resources department and then called Elsner, who was present at both of the alleged acts of harassment. Elsner presumably was truthful, but then what do you do with the fact that other people who were there say that it was just very noticeable, very shocking? Well, the only evidence is the affidavits of Douglas Gurney and he just said it was uncomfortable. An uncomfortable work situation is not sufficient to create an issue with regard to amnesty for taking FMLA leave months earlier. One quick question. You said that Rawlings gets a report from human resources. Correct. Does that report indicate the history of FMLA leave? It does not. Is that report in the record? It's not reported in the record, but George Rawlings in his affidavit said he did not have any knowledge of her taking FMLA leave. So if it was in the report, then he didn't read the report, or took the report. It might have been a verbal report. So there's no report in the record, but George Rawlings is clear that he did not have any knowledge of her taking FMLA leave or of her health condition. And what does she claim she said to Rawlings? She claims that she told George Rawlings that her co-workers were talking about her taking FMLA leave and that she felt uncomfortable since she came back from taking FMLA leave. George Rawlings does not recall that and there's no evidence. If that's evidence that he knew of her FMLA leave, he only got that after the claims of harassment after the meeting had already been set and after he had told Ellsner that he might terminate her. So he did not terminate her because of her taking FMLA leave a year and a half and several months earlier. Thank you. Just to address a couple things that were said. Before Ms. Marshall was demoted, she was a team lead. She had people who reported to her and the no recovery files were work that she had to do because these were files that had no money in them. As well as to oversee the closing of files by other analysts which were also not valuable to the client. And so it's the kind of work that takes a lot of doing between her first FMLA leave and the time that they meet with her and the so-called straight comment is made. She's working nights and weekends to clear out her backlog. What is your answer to the question? First let's separate out her work and then her work as a leader. In terms of her work, is it the case that her work was at least frozen so that when she came back she had no more than when she left? That's right. She had no new files of her own to oversee. And she had her same backlog or less? Of her own work. Now let's talk about her job as a team leader. While she was gone were stacks accumulating of the NRs that she was supposed to close for her subordinates? Yes. In fact, there's evidence from Beth Davidson that she, Beth, got help with her no recovery files. There was a big push on to clear out the backlog. And she, Beth, got help from others to clear out her backlog. Their supervisor, Leah Sarli, got help to clear out her backlog because the word was going around that anybody who has a backlog at the end of the summer is going to get fired. Ms. Marshall talks to Sarli about that. In a later meeting, she talks to Ellsner and says, I'm worried about this. I've heard that people are going to get fired if they don't get their backlogs cleared up. And Ellsner gives her kind of a non-answer. He says, well, you're just going to have to do it. So she works really hard to get all that done. She's emotionally fragile, but she puts in lots of time to make this happen. And then when all of her work has been done well, she gets demoted. I just want to make sure I understand. So far, everything has been about FMLA, mainly retaliation. It's hard to say it's an interference case. You don't brief separately the ADA claim. You just refer to the ADA in the course of your FMLA arguments. Is that a freestanding claim that you mean to be preserving? Or should we focus on this as an FMLA retaliation case? I think both claims are preserved. So to you, it's just the same thing? Is that why you put them together? It's the same employer behavior in response to her mental health issues. So you think there's just as much evidence of discrimination based on disability or retaliation because she's disabled as you do on FMLA interference? I think the employer responds to her in three fashions. She gets to take FMLA because she's emotionally fragile. When she comes back, they raise the issue that we don't want people taking leave around here. That's why when she's challenged, are you going to take any more leave? It's not a nice comment trying to check on her situation. It's pressure. When she talks back a little bit and says, can I see the report that shows what I'm doing wrong? Bradshaw leans in on her and says she's incompetent, she's not doing her job, even though he provides no evidence to do that. That's about disability? He's taking advantage of her emotional fragility. That's fine. For what it's worth, at least for me, you should brief these things separately. If you preserve two claims, you ought to have a separate briefing. You kind of answered my question, but you launched into something else. While she's away, she's accumulating NRs from her staff. Can you give us information about how significant that backlog was? What I'm asking is the first question. If someone goes out on leave and gets their job back, are they expected to do the work that accumulated and the work that's coming forward? In two pieces. She's not accumulating any of her own files, but she is accumulating work because she's responsible for all the NRs. How significant is that? Is that half of her job? Is it a third of her job? Was it enough to put somebody so far behind that they couldn't keep current with their own work? What was the nature of that? Evidence in the record doesn't have numbers on it as to the volume, but it's her testimony and the testimony from coworkers that the NR project was very, very important because it's important to the clients. They want to see their work moving through, whether Rawlings makes any money on it or not. They want that backlog cleared, so there's a lot of pressure on. She's afraid she's going to get fired if she doesn't get it all done. Did she clear her backlog in August or September? August. She was all caught up with everything in August? Yes. They say that by catching up, she fell behind in other work. Is that correct? There's some vague catch-all language from one of the affidavits. I don't think it's supported by any... It was in September that Pauley decided to demote her, right? Plumlee, yes. In September, Bradshaw and Elsner take their recommendation to Plumlee and she rubber stamps it. When in September is that? September 24th? I think so. It's close. Thank you very much. Thank you both for your argument.